# EXHIBIT B

STATE OF OHIO )
) SS:
COUNTY OF RICHLAND )

I, Cody Granneman, being first duly sworn upon oath, depose and state as follows:

1. I am over 18 years of age and I have personal knowledge of the matters described herein.

2. I am currently employed by R. S. Hanline and Co., Inc. ("Hanline") as Chief Operating Officer. In that role, I worked directly with Thomas P. Dunaway ("Dunaway"), Olivia Szczerba ("Szczerba"), and Dan Gluzman ("Gluzman") (Dunaway, Szczerba, and Gluzman are collectively referred to herein as "Defendants"), all of whom are former employees of Hanline.

3. Hanline hired Dunaway on or about December 29, 2014, to grow its presence in the brokerage market. During the time Dunaway worked for Hanline, myself and Tommy Rowlands ("Rowlands"), Hanline's Vice President of Sales, spent significant time working with Dunaway on how to develop business plans, accounting practices, accountability metrics, performance indicators, and how to onboard sales representatives.

4. Dunaway and I were personal friends during his employment with Hanline. However, in early to mid-April 2017, Rowlands and I noticed a major change in Dunaway's demeanor. In particular, Rowlands and I observed that Dunaway become less responsive, and seemed disengaged in the brokerage business unit. Dunaway also began giving delayed responses to messages from me during that time.

5. On May 2, 2017, Rowlands and I met with Dunaway in Ohio to discuss any concerns he had about the progress of the brokerage business. During this conversation, Dunaway become emotional to the point of tears, and expressed his feeling that he was not trusted by Hanline (in particular, the accounting department), and that there was not sufficient sense of "team" between the Shelby, Ohio, and Chicago, Illinois operations. Dunaway also mentioned ongoing personal cash flow issues, and that he was upset Hanline continued to work with his former company with whom he was embroiled in a lawsuit.

6. During the May 2 meeting, Rowlands and I reassured Dunaway of the company's commitment to both him and the brokerage business, and told him we would take steps to alleviate his concerns. Rowlands and I further reminded Dunaway that the brokerage business was an area of potential massive growth for Hanline, and that it was considered a key component of Hanline's future. Dunaway hugged both Rowlands and I following the meeting, and we felt confident that we would be able to move forward constructively with him.

7. On May 4, 2017, Dunaway abruptly resigned his employment despite Hanline's offer to address Dunaway's concerns. Dunaway informed me that he did not have any employment lined up, and that he was going to take some time off of work. Dunaway further stated that he would stay on as long as the company needed him, and he eventually agreed to a May 19, 2017, final date of employment.

8. Given the importance of the brokerage business unit to Hanline, on May 5, 2017, Hanline flew Gluzman and Szczerba to Ohio for a meeting with the executive team. This meeting included me, Rowlands, Tom Rowlands Sr., the President of Hanline, and Bob Hanline, the Owner of Hanline. The executive team assured Gluzman and Szczerba that the company was fully committed to the brokerage unit, and that, as a show of good faith, Hanline would guarantee Gluzman and Szczerba's compensation for a full year at their prior year's earnings, regardless of commissions. Gluzman and Szczerba accepted Hanline's offer on May 8, 2017, and committed to staying on at the company.

9. On May 8, 2017, Hanline's software vendor Produce Pro Software ("PPS") contacted Hanline to inform us of irregularity with Dunaway's activity. Specifically, PPS informed Hanline that Dunaway had contacted them from an email address associated with a different company and asked that PPS reconfigure the other company's settings to match Hanline's settings. PPS also informed us that, along with that email, Dunaway attached screenshots he had taken from Hanline's ERP system that contained confidential information regarding Hanline customers, including prices. In response to this information, I immediately instructed PPS to terminate Dunaway's access to the ERP software. However, because Hanline had substantial deals outstanding for which Dunaway had indispensable knowledge that needed to be closed before he left, Hanline did not take any further action against Dunaway at that time.

10. On May 9, 2017, and May 10, 2017, I worked out of Hanline's Chicago office so that I could spend time directly with Gluzman and Szczerba. During that time, Gluzman and Szczerba continued to arrange transactions with sellers and buyers, on behalf of Hanline, and did not indicate any desire to resign.

11. On May 10, 2017, Dunaway informed me in a phone call that he was joining Premier Produce Services, LLC ("Premier"), a direct competitor of Hanline.

12. On May 18, 2017, PPS for the first time sent Hanline the email messages and screenshots that Dunaway had sent to PPS on May 8, 2017. A true and accurate copy of the emails and screenshots are attached hereto as Exhibit B1. Upon review of those messages, Hanline discovered that Dunaway had contacted PPS from a Premier email address.

13. In mid-June 2017, Hanline learned that Dunaway is operating for Premier out of an office in Elmhurst, Illinois. That address is located at 528 South York Street, Elmhurst, Illinois 60126.

FURTHER AFFIANT SAYETH NAUGHT.

*[signature]*
CODY CRANNEMAN

Sworn to and subscribed in my presence this 18th day of July, 2017.

ANNETTE B. DOKLOVIC
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires
July 10, 2019
Recorded in Richland County

*[signature]*
NOTARY PUBLIC

My Commission Expires on July 10, 2019

4810-5992-1227, v. 1

3